UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * *

John H. Reuer, and
Larry R. Maetzold,

                Plaintiffs,

vs.                       REPORT AND RECOMMENDATION

Grand Casino Hinckley, and
Grand Casino's, Inc.,

                Defendants.      Civ. No. 09-1798 (MJD/RLE)

* * * * * * * * * * * * * * * * * *

I. Introduction

    This matter came before the undersigned United States Magistrate Judge upon a general assignment, made in accordance with Title 28 U.S.C. §636(b)(1)(B), upon the Applications of the Plaintiffs, John H. Reuer, ("Reuer") and Larry R. Maetzold, ("Maetzold"), for leave to proceed in forma pauperis, ("IFP"). The Plaintiffs appear pro se, and, in view of the fact that service of process has not yet been effected, no appearance has been made by, or on behalf of, the Defendants.

    This action was commenced by the filing of a Complaint with the Clerk of this Court, see, Complaint, Docket No. 1, in which the Plaintiffs are seeking a Judgment

against the Defendants Grand Casino Hinckley, and Grand Casino's, Inc., for allegedly violating their rights under the Americans with Disabilities Act ("ADA"). Id. at ¶3. The Plaintiffs did not pay any filing fee for this action but, instead, they filed separate Applications seeking leave to proceed IFP. See, Docket Nos. 2 and 3. The Plaintiffs' IFP Applications are now before the Court, and must be addressed before any other action is taken in this matter. For reasons which follow, we recommend that the Plaintiffs' IFP Applications be denied.

## II. Background

Reuer's IFP Application reveals that he is not currently employed, but he is receiving unemployment insurance benefits and a weekly stimulus payment which, together, provide him an income of more than $1,500.00 per month. See, Docket No. 3. Reuer's IFP application also shows that he owns a forty (40) acre farm worth $106,300.00, excavating equipment worth $50,000.00, and two (2) trucks worth under $10,000.00. Id. In addition, Reuer has $714.84 in cash, or a bank account, as well as an IRA account that has a balance of $30,000.00. Id.

Maetzold's IFP Application shows that he is not currently employed, but he is receiving unemployment insurance benefits, and a weekly stimulus payment, which provide him an income of more than $1,600.00 per month. See, Docket No. 2.

Maetzold's IFP application also shows that he owns some land and a manufactured home, purportedly worth $53,100.00, as well as four (4) motor vehicles. <u>Id.</u> The purported value of Maetzold's four vehicles range from $1,290.00 to $5,040.00. <u>Id.</u> In addition, Maetzold's has $213.91 in a bank account or cash. <u>Id.</u>

Looking at the combined income and assets, for each individual Defendant, as shown by their respective IFP Applications, we cannot conclude that they are financially eligible for IFP status. Given the value of their assets, most notably their various motor vehicles, and Reuer's equipment and IRA account, the Court finds that the Plaintiffs should each be able to pay the filing fee and costs of service of process for this case. Therefore, we recommend that the Plaintiffs' IFP Applications be denied. See, <u>Title 28 U.S.C. §1915(a)(1)</u>.

### III. <u>Discussion</u>

In considering the merits of an <u>in forma pauperis</u> Application, there is -- and there can be -- no "bright line" test which magically divines which claimants of modest means qualify under the Federal <u>in forma pauperis</u> Statute, and which do not. The countervailing considerations at issue are easy of recitation but far more demanding to resolve. In <u>Temple v. Ellerthorpe</u>, 586 F. Supp. 848, 850 (D.R.I. 1984), the conflicting interests found succinct expression:

> The trial court must be careful to avoid construing the statute so narrowly that a litigant is presented with a Hobson's choice between eschewing a potentially meritorious claim or foregoing life's plain necessities. * * * But, the same evenhanded care must be employed to assure that federal funds are not squandered to underwrite, at public expense, either frivolous claims or the remonstrances of a suitor who is financially able, in whole or in part, to pull his own oar.

See also, In re Williamson, 786 F.2d 1336, 1338-39 (8th Cir. 1986) ("The very purpose of section 1915 'is to provide an entre, not a barrier, to the indigent seeking relief in federal court,'" but "section 1915 'was not enacted for the purpose of requiring the public to underwrite frivolous lawsuits.'"), quoting Souder v. McGuire, 516 F.2d 820, 823 (3rd Cir. 1975), and In re Smith, 600 F.2d 714, 715 (8th Cir. 1979).

The balance achieved should equally weigh the privilege of pursuing a nonfrivolous action in the Federal Court system with a practical recognition that any such action will inflict some monetary expense upon all of the parties involved. The issue, therefore, does not hinge upon the ease of payment, for no litigant views the payment of costs as anything other than an unpleasant ancillary to the prosecution of a Federal claim.

    Rather, the analysis pivots -- we think necessarily -- upon the Plaintiff's ability to satisfy the initiation costs of his Federal action without substantially depleting his financial resources. While we recognize, based upon the Plaintiffs' sworn representations, that they may not be wealthy, we find that they have the wherewithal,

between them, to satisfy the modest costs incident to the commencement of their claims without necessitating forbearance of other expenditures for life's basic needs. See, Freeman v. Abdullah, 925 F.2d 266, 267 (8th Cir. 1991); In re Smith, supra at 715; Ali v. Cuyler, 547 F. Supp. 129, 130 (E.D. Pa. 1982); Temple v. Ellerthorpe, supra at 850-51, and cases cited therein. Although the imposition of any cost, as a precondition to the commencement of a cause of action, may invoke some second thoughts as to the wisdom of prosecuting that action, the expenditures here are not of such a magnitude as would dissuade the pursuit of a claim that was both firmly-held and well-intended.

     Lastly, we note our awareness of varying procedures which have evolved in the granting, and in the denial, of in forma pauperis Applications by Magistrate Judges. In some jurisdictions, the denial of such applications is routinely performed under the rubric of a Title 28 U.S.C. §636(b)(1)(A) Order, with its attendant "clearly erroneous" standard of review. However, since an unintended effect of a denial of the Application could be the abandonment of a claim, we believe that our resolution of the issue should best be expressed as a Recommendation, subject to de novo review should an appeal be taken. See, e.g., Woods v. Dahlberg, 894 F.2d 187 (6th Cir. 1990) (concluding that a denial of in forma pauperis status is the functional equivalent of an

involuntary dismissal and is outside the jurisdiction of a Magistrate Judge); Tripati v. Rison, 847 F.2d 548 (9th Cir. 1985).

Due to an apparent anomaly in Local Rule 4.2(a), one additional comment is warranted.[1]  The Local Rule requires that the Plaintiffs' Complaint be filed pending a determination of the propriety of their requests for pauper's status.  Although the Rule contemplates the striking of the Complaint if the "permission to proceed in forma pauperis is later denied," the Rule also implicitly suggests that a Magistrate Judge may deny the Application.  In order to avoid the potential that the Plaintiffs' Complaint should be served prior to a ruling by the District Court on the propriety of their IFP Applications, should an appeal be taken, this Court will issue its Order, which will preserve the status quo, until the District Court should rule on the matter.

---

[1]Local Rule 4.2(a) provides in pertinent part:

> Where a plaintiff seeks waiver of filing fees under in forma pauperis provisions, the plaintiff shall present the complaint and the motion for permission to proceed in forma pauperis to the Clerk.  The Clerk shall file the complaint as if the filing fee had been paid, and shall submit the in forma pauperis motion to a Magistrate Judge or Judge.  If permission to proceed in forma pauperis is later denied, the complaint shall be stricken.

Lastly, in the event that the Plaintiffs elect not to challenge this Recommendation, they will be afforded an opportunity to pay the normal $350.00 filing fee, see, Title 28 U.S.C. §1914(a), and, if they choose to do so, they will be allowed to pursue their claims as non-IFP litigants.

NOW, THEREFORE, It is --

RECOMMENDED:

1. That the Clerk of Court shall not issue a Summons, nor deliver process to the United States Marshal for service upon the Defendants, until so directed by further Order of the Court.

2. That the Plaintiffs' respective Applications for in forma pauperis status [Docket Nos. 2 and 3] be denied.


Dated: August 5, 2009                    s/Raymond L. Erickson
                                         Raymond L. Erickson
                                         CHIEF U.S. MAGISTRATE JUDGE


**N O T I C E**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by

filing with the Clerk of Court, and by serving upon all parties **by no later than August 21, 2009** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than August 21 , 2009,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.