UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

John H. Reuer and Larry R.
Maetzold,

                        Plaintiffs,

        vs.

Grand Casino Hinckley,

                        Defendant.                    Civ. No. 09-1798 (MJD/RLE)

        \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*


I.  <u>Introduction</u>

    This matter came before the undersigned United States Magistrate Judge

pursuant to a special assignment, made in accordance with the provisions of Title 28

U.S.C. §636(b)(1)(B), upon the Plaintiffs' Motion to Postpone the Hearing, and to

Compel Production of Documents, and upon the Defendant's Motion to Dismiss.  A

Hearing on the Motions was conducted on January 28, 2010, at which time, the

Plaintiffs appeared <u>pro se</u>, and the Defendant appeared by Margaret R. Ryan, Esq.  For

reasons which follow, we deny the Plaintiffs' Motion, and we grant the Defendant's Motion.[1]

## II. Factual and Procedural Background

The Plaintiffs were employed as "full-time Blackjack Dealers" by the Corporate Commission of the Mille Lacs Band of Ojibwe Indians ("Mille Lacs Band"), d/b/a Grand Casino Hinckley (the "Corporate Commission"), until their employment was terminated on or about June 27, 2008. See, Plaintiffs' Amended Complaint, Docket No. 6, at p. 1 ¶4. Thereafter, on December 22, 2008, the Plaintiffs filed Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), which were cross-filed with the Minnesota Department of Human Rights ("MDHR"). See, Affidavit of John J. McDonald, Jr.("McDonald Aff."), Exhibit F, Docket No. 18-6.

In those Charges, the Plaintiffs alleged that the Grand Casino Hinckley terminated their employment because of their alleged respiratory disabilities. Id. On April 15, 2009, their Charges were dismissed because the EEOC was "unable to

---

[1]Originally, the Plaintiffs had also named Grand Casino's, Inc., as a Defendant but, on January 11, 2010, the Plaintiffs filed a voluntary dismissal, with prejudice, as to their claims against the Defendant Grand Casino's, Inc., see, Docket No. 37, and by Order dated January 12, 2010, the Defendant Grand Casino's, Inc., was dismissed from this action with prejudice. See, Docket No. 38.

conclude that the information obtained establish[ed] [a] violation[] of the statutes."

McDonald Aff., Exhibit G, Docket No. 18-7, at pp. 1 and 2 of 2. Thereafter, the

MDHR dismissed their Charges of Discrimination on May 14, 2009, finding no

violation of the Minnesota Human Rights Act ("MHRA"). See, McDonald Aff.,

Exhibit H, Docket No. 18-8. As a result of their respective filings with the EEOC, and

the MDHR, the Corporate Commission does not argue that the Plaintiffs have failed

to exhaust their administrative remedies.

Following the EEOC's dismissal of their Charges of Discrimination, the

Plaintiffs commenced this action by filing a Complaint on July 13, 2009, which they

amended, as a matter of course, on August 24, 2009. See, Amended Complaint,

Docket No. 6. In their Amended Complaint, the Plaintiffs allege, in pertinent part, as

follows:

> On or about June 27, 2008 the plaintiffs were terminated as
> employees of Grand Casino for alleged violations of Casino
> policy. However, as the plaintiffs were the only full-time
> Blackjack Dealers who had documented respiratory
> disabilities which required Grand Casino to make reason-
> able accommodation as required under the Americans with
> Disabilities Act, we believe the terminations were really an
> attempt by Grand Casino to eliminate the necessity for
> making reasonable accommodation[s].

Id. at p. 1¶4.

As a result, the Plaintiffs' sole claim against the Corporate Commission is predicated upon an asserted violation of the Americans with Disabilities Act, Title 42 U.S.C. §§12112(a), and (b)(A)("ADA").

On November 2, 2009, the Corporate Commission filed a Motion to Dismiss, in which it contends that this Court is without jurisdiction over the subject matter of this action, as the Corporate Commission enjoys sovereign immunity from such suits, and because the ADA exempts the Corporate Commission from being sued for disability discrimination. In support of their contentions, the Corporate Commission has provided documentation, which the Plaintiffs have not controverted, that the Corporate Commission is an arm of the Mille Lacs Band. In response, the Plaintiffs argue that the Corporate Commission has not established that either it, or its gaming enterprise at the Grand Casino Hinckley, is wholly owned by the Mille Lacs Band, and accordingly, in the Plaintiffs' view, there is no basis on which the Corporate Commission can invoke tribal sovereign immunity. In addition, the Plaintiffs argue that the Corporate Commission has waived whatever sovereign immunity it might otherwise have had by taking actions which were inconsistent with such immunity.

We start with a recognition that the Minnesota Chippewa Tribe ("the Chippewa Tribe") is federally recognized as being composed of six (6) component Reservations,

which include the Mille Lacs Band.  See, <u>Title 73 F.R. 18553-01</u>, at 18553 and 18555, attached as <u>Exhibit A, Docket No. 18-1</u>, pp. 1 and 8 of 25; see also, <u>Exhibit B ("Revised Constitution and Bylaws of the Minnesota Chippewa Tribe"), Docket No. 18-2</u>, at p. 1 of 12.  The Department of Interior Regulations provide that "[t]he listed entities," inclusive of the Mille Lacs Band, "are acknowledged to have the immunities and privileges available to other federally acknowledged Indian tribes by virtue of their government-to-government relationship with the United States as well as the responsibilities, powers, limitations, and obligations of such tribes."  <u>Title 73 F.R. 18553-01</u>, at 18553.

Section 101 of Title 16 of the Mille Lacs Band Statutes provides for the establishment of a Corporation Commission as a Corporate Body Politic.  See, <u>Exhibit C ("Title 16 Mille Lacs Band Statutes Annotated"), Docket No. 18-3</u>, at p. 5 of 40, and <u>Title 16 MLBSA §101</u>.[2]  Section 101 further provides that "the Corporate Commission is both a political subdivision, clothed by federal and tribal law with all the privileges and immunities of the Band, except as expressly limited * * * and a

_____

[2]Hereinafter, we will abbreviate any further reference to the Mille Lacs Band Statutes Annotated as "MLBSA."

separately chartered corporation." Id. Section 109, which governs the sovereign immunity of the Corporate Commission, further provides as follows:

> (a)    The Corporate Commission shall be clothed by federal and tribal law with all the privileges and immunities of the Band, except as specifically limited by this title, **including sovereign immunity from suit in any state, federal or tribal court.**  Nothing contained in this title shall be deemed or construed to be a waiver of sovereign immunity by the Corporate Commission from suit which may be waived only in accordance with this title, the Corporate Commission Charter and Bylaws.  Nothing in this chapter shall be deemed or construed to be a consent of the Corporate Commission to the jurisdiction of the United States or of any State or of any tribe or band other than the Band with regard to the business or affairs of the corporation.
>
> (b)(1)    Sovereign immunity of the Corporate Commission **may be waived only by formal resolution** of the corporation's Board of Directors.

Id. at p. 9 of 40, Title 16 MLBSA§109 [emphasis added].

The Corporate Commission, which is considered a part of the Executive Branch of the Mille Lacs Band, is authorized to engage in business and economic development, on behalf of the Band.  Id. at p. 7 of 40, Title 16 MLBSA §106; see also, Exhibit D, Docket No. 18-4, at p. 4 of 20, Title 4 MLBSA §4.

The Corporate Commission is also authorized to conduct gaming activities, and one of its activities is to conduct business as the Grand Casino Hinckley.  See, Exhibit

E, Docket No. 18-5, pp. 5, 10 of 13, Title 15 MLBSA §§3(cc) and 104; Declaration of Michael B. Wacker, ("Wacker Decl."), Docket No. 19, ¶2.[3]  The Mille Lacs Band Tribal law also provides that "[t]he Band shall have the sole proprietary interest in and responsibility for conducting any * * * Gaming Activities authorized by this Title, except to the extent the Band may contract with and license a person or entity to own, operate or manage a Gaming Enterprise."  Title 15 MLBSA §201, Exhibit E, at p. 12 of 13.  All individuals who work at the Grand Casino Hinckley are employed by the Corporate Commission and, consequently, the Plaintiffs, who formerly worked at the Grand Casino Hinckley, were employees of the Corporate Commission.  See, Wacker Decl. at ¶¶3-4; Amended Complaint, supra at ¶4.

On September 10, 1990, the Mille Lacs Band entered into a Management and Construction Agreement, with the Mille Lacs Gaming Corporation ("MGC"),[4] a

---

[3]Section 3(cc) defines "gaming enterprise" as "the Grand Casino Mille Lacs, the Grand Casino Hinckley and any other commercial facility or business owned by the Band through the Corporate Commission and operated, in whole or in part, for the conduct of Gaming or related to Gaming Activities within the jurisdiction of the Band."

[4]Although it is not entirely clear from the Record, it appears that Grand Casino, Inc., is MGC's successor in interest.  Hereinafter, in the interests of clarity, we will refer to MGC as Grand Casino, Inc., regardless of the time period.

corporation formed under the laws of Minnesota.[5]  See, <u>Hinckley Management and Construction Agreement</u>, attached to <u>Exhibit C, Affidavit of Margaret R. Ryan,</u> <u>("Ryan Aff."), Docket No. 32</u>; see also, <u>Supplemental Declaration of Michael B.</u> <u>Wacker, ("Supp. Wacker Decl."), Docket No. 24</u>, ¶2; <u>Affidavit of Michael Cohen</u> <u>("Cohen Aff."), Docket No. 14</u>, ¶3.   The agreement states that the Mille Lacs Band "is the beneficial owner of a parcel of reservation property held in trust by the United States * * * [and the Mille Lacs Band] desires to use the Property to improve the economic conditions of its members, to enable it to better serve the social, economic, educational and health needs of the Band, to increase Band revenues and to enhance the Band's economic self-sufficiency and self-determination." <u>Hinckley Management</u> <u>and Construction Agreement</u>, supra at ¶1.2.

Moreover, the agreement confirms that Grand Casino, Inc., agreed to loan the Corporate Commission the funds necessary to construct the Hinckley facility, given that the Commission lacked the resources to construct the facility at that time.  <u>Id.</u> at ¶¶1.4-1.6.  The agreement defines the enterprise as "a commercial enterprise * * * to

_____

[5]The parties executed another agreement on August 9, 1991, which further outlined the terms of the parties' relationship.  See, <u>Agreement Between the Corporate</u> <u>Commission and Grand Casinos, Inc.</u>, attached to <u>Ryan Aff.</u>, supra at Exhibit B.  In that agreement, the Mille Lacs Band expressly waived its sovereign immunity as to claims that might arise out of that contract only.  <u>Id.</u> at p. 6¶6.1.

engage in Class II Gaming and Other Gaming and any other lawful commercial activity allowed on the Property." Id. at ¶2.1. The agreement also states that "[t]he Commission hereby retains and engages [Grand Casino, Inc.] for purposes of managing the Facility and [Grand Casino, Inc.] accepts such retention and engagement." Id. at ¶3.1. The management contract contained a provision, in which the Corporate Commission expressly waived sovereign immunity for controversies arising from the management and construction contract itself. Id. at ¶¶20-23.

The management contract also contained an early buyout provision and, in 1998, the Corporate Commission exercised its option for an early buyout, with respect to the Grand Casino Hinckley. Id. at ¶26; see also, Cohen Aff., supra at ¶4. The Corporate Commission avers that, since its exercise of the early buyout provision in 1998, it has not had a contract, or license, that extended the ownership, operation, or management, of its gaming enterprise, to another person or entity. See, Supp. Wacker Decl., supra at ¶4. Around the same time that the Corporate Commission exercised its early buyout rights, on December 31, 1998, the Grand Casino, Inc., which is the owner of various trademarks related to the Grand Casino business, gave the Corporate

Commission a license to use the "Grand Casino" mark.  See, <u>Intellectual Property</u>

<u>License Agreement</u>, attached as <u>Exhibit B, Ryan Aff.</u>, supra; <u>Cohen Aff.</u>, supra at ¶5.[6]

Well after the parties' original briefing was complete, the Plaintiffs, on two (2)

occasions, proffered additional documentation, without leave of the Court and, in

many instances, without any attestation as to the authenticity of the documents being

submitted.  First, on January 21, 2010, just seven (7) days before the Hearing, the

Plaintiffs filed their Addendum to Plaintiffs' Response, see, <u>Docket No. 39</u>, to which

they appended a Domestic Corporation Annual Renewal, from the Office of the

Minnesota Secretary of State, for the Hinckley Holding Company ("HHC"), see,

<u>Docket No. 39-1</u>, at p. 1, and a Quit Claim Deed, dated January 2, 2009, which

transfers ownership in certain real property from Grand Casinos, Inc., to HHC.  <u>Id.</u> at

p. 2.  In addition, during the course of the Hearing, the Plaintiffs proffered additional

documents which, again, were largely without certification as to their authenticity.

See, <u>Docket No. 46</u>.  According to the Plaintiffs, "these documents establish that a

_____

[6]The License Agreement provided by the Corporate Commission designates Grand Casino, Inc., as the licensor, and Lakes Gaming, Inc., as the licensee.  See, <u>Intellectual Property License Agreement</u>, <u>Exhibit B, Ryan Aff.</u>.  Lakes Gaming, Inc., appears to be a Minnesota corporation, but the Record does not reveal its relationship with the Corporate Commission, but presumably it is some sort of holding company owned by the Corporate Commission, or the Mille Lacs Band.

non-tribal interest existed at Grand Casino Hinckley on June 27, 2008," such that the Plaintiffs "believe[d] the courts [sic] jurisdiction can be established," and therefore, they were "proceeding with this case." Letter from Reuer to Defense Counsel, dated January 21, 2010, Second Affidavit of Margaret R. Ryan, Exhibit A, Docket No. 41-1, at p. 1 of 6.

The Corporate Commission requested, and obtained, the Court's leave to respond to the Plaintiffs' Addendum, see, Corporate Commission's Responsive Memorandum, Docket No. 40, and again, with Court leave, the Corporate Commission responded to the documents that the Plaintiffs proffered at the Motion Hearing. See, Corporate Commission's Rebuttal, Docket No. 43. Together with each of its responses, the Corporate Commission tendered documents which demonstrate that the real property, which was transferred from Grand Casino, Inc., to HHC, was adjacent to the land which is held in trust by the United States for the benefit of the Mille Lacs Band, and on which the Corporate Commission's gambling casino is entirely located. See, Supplemental Affidavit of Margaret R. Ryan, Exhibit A, Docket No.44-1. As a consequence, the land on which the Plaintiffs worked was **not** owned by any non-tribal entity, as the Plaintiffs contend.

The absence of any non-tribal owners of lands upon which the casino is operated is underscored by the provisions of the Indian Gaming Regulatory Act, Title 25 U.S.C. §§2701, et seq. ("IGRA"), which require that all Indian gaming occur on Indian lands. The Corporate Commission represents, and the evidence establishes, that "all of the work performed by Plaintiffs in connection with their job responsibilities as blackjack dealers occurred on property held in trust by the United States for the benefit of the Mille Lacs Band of Ojibwe Indians (Mille Lacs Band) (trust lands)." Corporate Commission's Rebuttal, Docket No. 43, at p. 1-2, citing Title 25 U.S.C. §§2701 to 2721, Second Affidavit of Margaret R. Ryan, Exhibit C, Docket No. 41, and Supplemental Affidavit of Margaret R. Ryan, Exhibit A, Docket No. 44-1.

With the foregoing as our factual and procedural backdrop, we address the parties' arguments in turn.

### III. Discussion

A. The Plaintiffs' Request to Continue the Hearing.

On December 29, 2009, the Plaintiffs filed a Request for a Postponement of the Hearing, see, Docket No. 27, in which they requested that the Hearing on the Corporate Commission's Motion to Dismiss be continued, until such time as they had

an opportunity to review certain documents that they had requested the Commission

to produce. Specifically, the Plaintiffs sought the following documents:

> 1. A copy of ownership or management agreements or contracts between Grand Casinos, Inc. and the Mille Lacs Band of Ojibwe which pertain to Grand Casino Hinckley.

> 2. A copy of any ownership or management agreements or contracts between the Mille Lacs Band of Ojibwe and any non-tribal business entity or person.

> 3. A copy of any documents establishing any owner-ship interest the Mille Lacs Band has in Grand Casinos Inc.

See, <u>Plaintiffs' Request for Court Order of Compliance with Request to Product Documents, Docket No. 28</u>, p. 2; see also, <u>Docket No. 22-2</u>, at p. 6.

In response, the Corporate Commission argues that the requested documents are

irrelevant to the Court's jurisdictional determination but, nonetheless, it also avers that

it provided the Plaintiffs, on January 5, 2010, with copies of the requested documents,

to the extent that the documents existed.[7]

---

[7]The Plaintiffs advise that, on November 23, 2009, they served a Request for Production of Documents upon the Corporate Commission. See, <u>Plaintiffs' Request for a Court Order for Compliance with Request to Produce Documents, Docket No. 28</u>, at p. 1 of 2. Of course, "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)," Federal Rules of Procedure, absent the grant of Court leave. <u>Rule 26(d), Federal Rules of Civil Procedure</u>. The Corporate Commission represents that no Rule 26(f) Conference had been convened

(continued...)

Since the Hearing on the Motion to Dismiss was not conducted until January 28, 2010, and since the Plaintiffs submitted additional documentation during the course of that Hearing, we denied the Motion to Continue as moot, as they had been afforded sufficient time to review the documents that the Corporate Commission had produced, and we now memorialize that ruling, which was made at the commencement of the Motions Hearing.

    B.    <u>The Corporate Commission's Motion to Dismiss</u>.

    1.    <u>Standard of Review</u>.  As a Federal Court, we have limited jurisdiction and may only hear matters which fall within our jurisdictional domain. See, <u>Clark v. Baka</u>, 595 F.3d 712, 714 (8th Cir. 2010)("Federal courts are courts of limited jurisdiction," and "[t]hus, every federal [] court has a special obligation to consider its own jurisdiction * * * to entertain a case where, as here, we believe that jurisdiction may be lacking."), quoting <u>McAdams v. McCord</u>, 533 F.3d 924, 927 (8th Cir. 2008), and <u>Huggins v. FedEx Ground Package System, Inc.</u>, 566 F.3d 771, 773 (8th Cir. 2009); <u>Zanders v. Swanson</u>, 573 F.3d 591, 593 (8th Cir. 2009)("Federal courts are not courts of general jurisdiction; they have only the power that is authorized by

---

[7](...continued)
by the parties, here, and, until the Plaintiffs' filed their Request for a Court Order, on December 29, 2009, they had not sought the Court's leave to conduct discovery.

Article III of the Constitution and the statutes enacted by Congress pursuant thereto."), quoting <u>Gray v. City of Valley Park</u>, 567 F.3d 976, 982-83 (8th Cir. 2009), quoting, in turn, <u>Bender v. Williamsport Area Sch. Dist.</u>, 475 U.S. 534, 541 (1986).  As a consequence, we have a primordial duty, in every case before us, to inquire whether the vital prerequisite of subject matter jurisdiction has been satisfied.  See, <u>Bradley v. American Postal Workers Union, AFL-CIO</u>, 962 F.2d 800, 802 n. 3 (8th Cir. 1992); <u>Thomas v. Basham</u>, 931 F.2d 521, 523 (8th Cir. 1991); <u>Hoeffner v. University of Minnesota</u>, 948 F. Supp. 1380, 1383 (D. Minn. 1996).

Since subject matter jurisdiction is a threshold consideration, the Court has "broader power to decide its own right to hear the case than it has when the merits of the case are reached."  <u>Bellecourt v. United States</u>, 994 F.2d 427, 430 (8th Cir. 1993), cert. denied, 510 U.S. 1109 (1994), quoting <u>Osborn v. United States</u>, 918 F.2d 724, 729 (8th Cir. 1990); see also, <u>Union Pacific Railroad Co. v. Brotherhood of Locomotive Engineers and Trainmen General Committee of Adjustment</u>, --- U.S. ---, 130 S.Ct. 584, 596 (2009)("Subject-matter jurisdiction properly comprehended, we emphasized, refers to a tribunal's 'power to hear a case,' a matter that 'can never be forfeited or waived.'"), quoting <u>Arbaugh v. Y & H Corp.</u>, 546 U.S. 500, 514 (2006); <u>Bueford v. Resolution Trust Corp.</u>, 991 F.2d 481, 485 (8th Cir. 1993)("Lack of subject

matter jurisdiction * * * cannot be waived[;][it] may be raised at any time by a party to an action, or by the court <u>sua</u> <u>sponte</u>.”); <u>Redman v. F.A.A.</u>, 759 F. Supp. 1384, 1387 (D. Minn. 1991); <u>Rule 12(h)(3), Federal Rules of Civil Procedure</u>.

Moreover, “[i]t is well-settled that the plaintiff bears the burden of establishing subject matter jurisdiction.” <u>Ferguson v. SMSC Gaming Enterprise</u>, 475 F. Supp.2d 929, 930 (D. Minn. 2007), quoting <u>Nucor Corp. v. Nebraska Public Power Dist.</u>, 891 F.2d 1343, 1346 (8th Cir. 1989), cert. denied, 498 U.S. 813 (1990). A party may challenge, at any time, a Court’s jurisdiction over the subject matter of a controversy, under Rule 12(b)(1), Federal Rules of Civil Procedure, since a defense, on subject matter jurisdiction grounds, cannot be waived. See, <u>Moubry v. Independent School District No. 696 (Ely)</u>, 951 F. Supp. 867, 882 (D. Minn. 1996), citing <u>Northwest Airlines, Inc. v. Transport Workers</u>, 451 U.S. 77, 95 (1981).

“In order to properly dismiss an action under Rule 12(b)(1), the challenging party must successfully attack the Complaint, either upon its face or upon the factual truthfulness of its averments.” <u>Moubry v. Independent School Dist. No. 696</u>, supra at 883, citing <u>Titus v. Sullivan</u>, 4 F.3d 590, 593 (8th Cir. 1993); <u>Osborn v. United States</u>, supra at 729 n. 6. If the defendant brings a facial challenge -- a challenge that, even if truthful, the facts alleged in a Complaint are insufficient to establish

jurisdiction -- the Court reviews the pleadings alone, and "the non-moving party [is afforded] the same protections that it would receive under a Rule 12(b)(6) motion to dismiss." Carlson Holdings, Inc. v. NAFCO Ins. Co., 205 F. Supp.2d 1069, 1073 (D. Minn. 2001), citing Titus v. Sullivan, supra at 593; Osborn v. United States, supra at 729 n. 6. Accordingly, "[t]he court presumes that all of the factual allegations in the complaint concerning jurisdiction are true and will not dismiss the claims unless the plaintiff fails to allege an essential element for subject matter jurisdiction." Id.

However, in factual challenges to subject matter jurisdiction -- contending that the allegations in the Complaint, that are intended to establish jurisdiction, are insufficiently supported by the facts -- the Court "may consider matters outside the pleadings and the non-moving party does not benefit from the safeguards of 12(b)(6)." Id. When a plaintiff's "'allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof,'" "[a]nd * * * for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence.'" Zunamon v. Brown, 418 F.2d 883, 886 (8th Cir. 1969), quoting McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936).

2.	Legal Analysis.	In its Motion to Dismiss, the Corporate Commission argues that, as an arm of the Mille Lacs Band, it is entitled to tribal sovereign immunity, which immunizes it from suit in Federal Court.  Alternatively, the Commission contends that, even if it were stripped of such immunity, by waiver or otherwise, the ADA does not permit disability discrimination lawsuits against tribes.  Since they involve somewhat different considerations, we separately address each prong of the Corporate Commission's argument.[8]

a.	Tribal Sovereign Immunity.  The Corporate Commission argues that it is entitled to sovereign immunity in State and Federal Courts.  In response, the Plaintiffs argue that the Corporate Commission has failed to establish that the Grand Casino Hinckley is a business entity that is wholly-owned by the Indian Tribe, and therefore, tribal sovereign immunity should not attach.  The Plaintiffs further argue that the Corporate Commission has conducted itself in such a manner, so as to waive its entitlement to sovereign immunity.[9]

---

[8]We benignly overlook the Corporate Commission's assertion that the Plaintiff Larry R. Maetzold does not have standing to sue, because his ADA claim was discharged in a bankruptcy proceeding, since we find that his claim is otherwise dismissible, as a matter of law, on alternative bases.

[9]As an initial matter, we recognize that, under the law of the Eighth Circuit,
(continued...)

<sup>9</sup>(...continued)
"[s]overeign immunity is a jurisdictional question."  <u>Hagen v. Sisseton-Wahpeton Community College</u>, 205 F.3d 1040, 1043 (8th Cir. 2000), quoting <u>Rupp v. Omaha Indian Tribe</u>, 45 F.3d 1241, 1244 (8th Cir. 1995), and citing <u>Brown v. United States</u>, 151 F.3d 800, 804 (8th Cir. 1998).  However, "[s]overeign immunity * * * is not of the same character as subject matter jurisdiction."  <u>In Re Prairie Island Dakota Sioux</u>, 21 F.3d 302, 304 (8th Cir. 1994)(holding that the District Court did not err in finding that there was no subject matter jurisdiction and declining to consider whether the Indian Tribe was entitled to sovereign immunity).

> Our Court of Appeals aptly described the difference, as follows:
>> [T]ribal sovereign immunity may be waived in certain circumstances and is subject to the plenary power of Congress.  See, Santa Clara Pueblo, 436 U.S. [49, 58-59 (1978)].  Lack of subject matter jurisdiction, on the other hand, may not be waived.  Bueford v. Resolution Trust Corp., 991 F.2d 481, 485 (8th Cir. 1993); Fed.R.Civ.P. 12(h)(3).  Second, sovereign immunity operates essentially as a party's possible defense to a cause of action.  Weeks Const., Inc. v. Oglala Sioux Housing Auth., 797 F.2d 668, 671-72 (8th Cir. 1986).   In contrast, subject matter jurisdiction is primary and an absolute stricture on the court.  Leroy v. Great Western United Corp., [443 U.S. 173, 180 (1979)].  Finally, a waiver of sovereign immunity cannot extend a court's subject matter jurisdiction. [Weeks Const., Inc., v. Oglala Sioux Housing Auth., supra at 672].

<u>In re Prairie Island Dakota Sioux</u>, supra at 304-305.

Although there is a slight difference, the Courts have found it proper to analyze a Motion to Dismiss on sovereign immunity grounds under the rubric of Rule 12(b)(1).   See, <u>Hagen v. Sisseton-Wahpeton Community College</u>, supra at 1042-1043 (recognizing that a Motion to Dismiss on sovereign immunity grounds may be filed under Rules 12(b)(1), and 12(h)(3), Federal Rules of Civil Procedure), citing <u>Brown</u>

(continued...)

1)      <u>Standard of Review</u>.  "Indian tribes are considered 'domestic dependent nations' which 'exercise inherent sovereign authority over their members and territories." <u>Altheimer & Gray v. Sioux Mfg. Corp.</u>, 983 F.2d 803, 812 (7th Cir. 1993), cert. denied, 510 U.S. 1019 (1993), quoting <u>Oklahoma Tax Com'n v. Citizen Band Potawatomi Indian Tribe</u>, 498 U.S. 505, 509 (1991). "Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers." <u>Smith v. Babbitt</u>, 875 F. Supp. 1353, 1359 (D. Minn. 1995), aff'd, 100 F.3d 556 (8th Cir. 1996), cert. denied, 522 U.S. 807 (1997), citing <u>Santa Clara Pueblo v. Martinez</u>, 436 U.S. 49, 58 (1978)[other citations omitted]. Further, "[a] tribe's sovereign immunity extends to its agencies." <u>Ferguson v. SMSC Gaming Enterprise</u>, supra at 930-931, citing <u>Hagen v. Sisseton-Wahpeton Community College</u>, 205 F.3d 1040, 1044 (8th Cir. 2000); <u>Dillon v. Yankton Sioux Tribe Housing Auth.</u>, 144 F.3d 581, 583 (8th Cir. 1998); <u>Cook v. AVI Casino Enterprises, Inc.</u>, 548 F.3d 718, 725-26 (9th Cir. 2008)(As an "arm of the Tribe," a casino is entitled to the

_____

[9](...continued)
<u>v. United States</u>, supra at 804 (finding that, since sovereign immunity is a jurisdictional issue the District Court erred in treating a Rule 12(b)(1), as a Rule 12(b)(6) Motion to Dismiss).

same sovereign immunity as the Indian tribe which owned it), cert. denied, --- U.S. ---,

129 S.Ct. 2159 (2009).

However, Tribal sovereign immunity is not absolute:

> This aspect of tribal sovereignty, like all others, is subject
> to the superior and plenary control of Congress.  But
> "without congressional authorization," the "Indian Nations
> are exempt from suit."

Santa Clara Pueblo v. Martinez, supra at 58, quoting United States v. United States
Fidelity and Guaranty Co., 309 U.S. 506, 512 (1940); see also, Ferguson v. SMSC
Gaming Enterprise, supra at 930(noting that "[a]s a matter of federal law, an Indian
tribe is subject to suit only where Congress has authorized the suit or the tribe has
waived its immunity."), quoting Kiowa Tribe of Oklahoma v. Manufacturing
Technologies, Inc., 523 U.S. 751, 753 (1998).

"A tribe may [also] waive its immunity, but such waiver 'cannot be implied but must

be unequivocally expressed.'"  Rosebud Sioux Tribe v. Val-U Const. Co. of South

Dakota, Inc., 50 F.3d 560, 562 (8th Cir. 1995), cert. denied, 516 U.S. 819 (1995),

quoting Santa Clara Pueblo v. Martinez, supra at 58; Weeks Constr. Inc. v. Oglala

Sioux Housing Auth., 797 F.2d 668, 671 (8th Cir. 1986).

Accordingly, absent either a clear waiver of immunity by the Tribe itself, or

congressional abrogation of that immunity, Tribes are immune from suit.  Ultimately,

we adhere to a "'strong presumption' in favor of tribal sovereign immunity."  Smith

v. Babbitt, supra at 1359, quoting Pan Am. Co. v. Sycuan Band of Mission Indians, 884 F.2d 416, 419 (9th Cir. 1989).

2)    Legal Analysis.  It is undisputed that the Plaintiffs' employer was the Corporate Commission, and it is not disputed, at least on the basis of any evidentiary showing, that the Corporate Commission is not owned, in any part, by a non-tribal entity.  While it is true that "not every enterprise that is owned or staffed by members of a tribe may be considered a tribal entity," it is well-established that tribal sovereign immunity extends to arms of the Indian tribe, including gaming enterprises.  Graham v. Applied Geo Technologies, Inc., 593 F. Supp.2d 915, 920 (S.D. Miss. 2008); see also, Cook v. AVI Casino Enterprises, Inc., supra at 726 (affirming District Court's holding that casino was an arm of the Indian tribe, where it was created pursuant to a tribal ordinance, and was wholly owned and managed by the Tribe); Allen v. Gold Country Casino, 464 F.3d 1044, 1046-47 (9th Cir. 2006), cert. denied, 549 U.S. 1231 (2007)(holding that casino, which was owned and operated by Indian tribe, was entitled to sovereign immunity); Ingrassia v. Chicken Rach Bingo and Casino, 676 F. Supp.2d 953,957 (E.D. Cal. 2009)(rejecting the plaintiffs' argument that the casino had not established that it was an arm of the tribe); Barker v. Menominee Nation Casino, 897 F.Supp. 389, 393 (E.D. Wis. 1995)(stating

that "an action against a tribal enterprise is, in essence, an action against the tribe itself," and applying tribal sovereign immunity to casino corporation whose charter was issued through tribal ordinance and pursuant to tribal constitution); but cf., Myrick v. Devils Sioux Mfg. Corp., 718 F. Supp. 753 (D. N.D. 1989)(state-chartered corporation partially owned by Indian tribe was not a tribal entity).

Given the Record presented, we find no merit to the Plaintiffs' argument that the Corporate Commission, or the Grand Casino Hinckley, is not wholly owned by the Mille Lacs Band. Moreover, we think it plain from the Record, that the Corporate Commission was formed by the Mille Lacs Band, in order to conduct gaming activities on its own behalf, and for the benefit of the Band. As such, to the extent that the Plaintiffs assert that a tribal corporation may not be entitled to tribal sovereign immunity where it is not wholly owned by an Indian Tribe, we find the argument has no application here, since the Record fully establishes that the Corporate Commission is wholly owned by the Mille Lacs Band.

Specifically, we find no merit to the Plaintiffs' contention that, because the Grand Casino, Inc., appears to have owned land adjacent to the trust lands, on which the Corporate Commission operates its gambling casino, and sold that land to HHC, by a Quit Claim Deed, on or about January 2, 2009, the Corporate Commission should

be stripped of its tribal immunity.  Even if the proposition were true, that some non-tribal entity owned lands adjacent to the Corporate Commission's casino where the Plaintiffs were employed, we fail to discern any legal principle that would, as a result, divest the Commission of its immunity from suit, in this Federal Court, and the Plaintiffs have cited no case to support that implausible suggestion.  Indeed, the Plaintiffs have failed to explain why the ownership of land, here, which is adjacent to the property held in trust by the United States, should have any impact on their employment by the Corporate Commission, and a logical explanation eludes this Court.[10]

---

[10]By way of analogy, the fact that an employer operates its business on real estate that is leased from another, would generally have no impact, under the law as we understand it, on the employer's liability arising from an employment discrimination claim asserted by one of that employer's workers.  While that tenant-landlord relationship may have other legal implications, we fail to see how that relationship alters an independent employer-employee relationship, and the Plaintiffs have failed to cogently explain their theory for piercing the Corporate Commission's tribal sovereign immunity.

Moreover, even if some of the Corporate Commission's employees work off of the lands held in trust by the United States -- that is, work in other sites than the casino, where the Plaintiffs worked -- the Supreme Court has held that "off-reservation commercial conduct" by an Indian Tribe does not strip the Tribe of its sovereign immunity from suit for, "[a]s a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc., 523 U.S.

(continued...)

As noted by the Corporate Commission, and not controverted by the Plaintiffs, neither the United States Congress, nor the Corporate Commission, has expressly consented to this action. However, the Plaintiffs do argue that the Corporate Commission engaged in conduct that was inconsistent with tribal sovereign immunity. See, <u>Plaintiffs' Response</u>, supra at p. 1. In particular, we understand the Plaintiffs to contend that, by complying with OSHA Regulations, and by posting notices of employee rights under Title VII, the ADA, and other laws, the Corporate Commission has expressed an intent to waive its tribal sovereign immunity. <u>Id.</u> The argument, however, is not supported by the law.

"In considering whether tribal sovereign immunity has been waived, courts employ a 'strong presumption' in favor of tribal sovereign immunity * * * [and a]ccordingly, a waiver of tribal sovereign immunity may not be implied, but must be 'unequivocally expressed' by either the tribe or by Congress." <u>Smith v. Babbitt</u>, supra

---

[10](...continued)
751, 760 (1998); see also, <u>Melby v. Grand Portage Band of Chippewa</u>, 1998 WL 1769706 at *3 (D. Minn., August 13, 1998)("In <u>Kiowa</u>, the Tribe was being sued for 'off-reservation commercial conduct' and the Court found that it retained its sovereign immunity nonetheless."). Here, the Plaintiffs have failed to prove that Congress authorized their suit against the Corporate Commission and, as we further detail, we find no waiver of sovereign immunity by the Mille Lacs Band, or the Corporate Commission.

at 1359; <u>Allen v. Gold Country Casino</u>, supra at 1047 (holding that statement in employment application that the plaintiff could be terminated for any reason consistent with State and Federal law, and recognition that it would practice equal employment opportunities, was not an unequivocal waiver of sovereign immunity); <u>Guthrie v. Circle of Life</u>, 176 F. Supp.2d 919, 924 (D. Minn. 2001)(holding that tribe's acceptance of funds under the Individuals with Disabilities Education Act ("IDEA") did not constitute an implied waiver of sovereign immunity for actions brought under IDEA); <u>Val-U Const. Co. of S.D. v. Rosebud Sioux Tribe</u>, 146 F.3d 573, 577 (8th Cir. 1998). The Corporate Commission's actions are simply inadequate to establish an unequivocal expression of waiver.

Accordingly, we find that the Corporate Commission is entitled, as a matter of law, to a dismissal, with prejudice, of the Plaintiffs' Amended Complaint because, as an arm of the Mille Lacs Band, the Corporate Commission is immune from suit, under the circumstances presented here, and therefore, make that recommendation.

b.      <u>The Plaintiffs' ADA Claim</u>.  Alternatively, the Corporate Commission maintains that it is not subject to suit under the ADA, and therefore, that the Court is without jurisdiction because there is no Federal Question presented for review.  We agree, and conclude that, even if the Plaintiffs had successfully shown

that a non-tribal entity had owned lands beneath the casino, at the time that their employment with the Corporate Commission was terminated, the Commission still could not be lawfully sued under the ADA. See, <u>Auto-Owners Ins. Co. v. Tribal Court of the Spirit Lake Indian Reservation</u>, 495 F.3d 1017, 1020 (8th Cir. 2007) ("Even if an Indian tribe waives its sovereign immunity, such a waiver does not automatically confer jurisdiction on federal courts," and therefore, "[a] federal court must make a separate determination as to whether it has subject matter jurisdiction over the suit."), citing <u>Weeks Construc., Inc. v. Oglala Sioux Hous. Auth.</u>, supra at 671-72.

As we have noted, the Plaintiffs' sole cause of action is a claim for disability discrimination in violation of the ADA.[11] Title I of the ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of

---

[11]Even if we errantly construed the Plaintiffs' Amended Complaint as implicitly asserting a claim under the MHRA, we would reach the same conclusion to dismiss any such claim, as Indian Tribes are not subject to suit under the MHRA. See, <u>Gavle v. Little Six, Inc.</u>, 534 N.W.2d 280 (Minn.App. 1995), aff'd, 555 N.W.2d 284 (Minn. 1996), cert. denied, 524 U.S. 911 (1998); <u>Cohen v. Little Six, Inc.</u>, 543 N.W.2d 376 (Minn.App. 1996), aff'd, 561 N.W.2d 889 (Minn. 1997), cert. denied, 524 U.S. 903 (1998); see also, <u>Setchell v. Little Six, Inc.</u>, 1996 WL 162560 (Minn.App., April 9, 1996), rev. granted (Minn., July 10, 1996), cert. denied, 521 U.S. 1124 (1997) (granting the dismissal of ADA, and MHRA disability claims, on tribal sovereign immunity grounds); <u>Coleman v. Duluth Police Dep't</u>, 2009 WL 921145 at *25 n. 20 (D. Minn., March 31, 2009), aff'd, 2010 WL 1427342 (8th Cir., April 12, 2010).

disability * * * ."  Title 42 U.S.C. §12112(a).  A"covered entity" is defined as "an

employer, employment agency, labor organization, or joint labor-management

committee."  Title 42 U.S.C. §12111(2).  However, the ADA expressly provides that

**"[t]he term 'employer' does not include** -- the United States, a corporation wholly

owned by the government of the United States, or **an Indian tribe."**  Title 42 U.S.C.

§12111(5)(B)(i) [emphasis added].

As the Corporate Commission has noted, the cases related to the ADA's

exclusion of Indian Tribes from its definition of employer is somewhat limited.

However, in Charland v. Little Six, Inc., 198 F.3d 249 (8th Cir. 1999)[Table Decision].

the Court of Appeals for the Eighth Circuit affirmed the District Court's dismissal, for

a want of subject matter jurisdiction, which was predicated upon the Court's

determination that both  the ADA, and Title VII of the Civil Rights Act of 1964,

explicitly exempt Indian Tribes from the definition of employer.

The Court's conclusion is further buttressed by the District Court's decision in

that case.  See, Charland v. Little Six, Inc., 112 F. Supp.2d 858, 865-866 (D. Minn.

2000), aff'd, 13 Fed.Appx. 451 (8th Cir. 2001).  There, a plaintiff sued an Indian Tribe

that operated a casino where the plaintiff had previously worked, and the matter was

before the District Court on a Motion for Rule 11 Sanctions, assertedly arising from

frivolous litigation.  Id.  As pertinent here, the District Court noted that both the ADA,

and Title VII, expressly excluded Indian Tribes from their application, and accord-

ingly, the plaintiff had not offered any basis upon which subject matter jurisdiction

could exist, with respect to the tribal defendants.  Id.  Although the plaintiff had not

previously developed the argument in that litigation, she suggested, in an effort to

avoid sanctions, that the ADA's exclusion of Indian Tribes should not be construed

so as to exclude Indian Casinos from the coverage of the ADA, and Title VII.  Id.

In evaluating the plaintiff's argument, there, the District Court noted that the

same contention had not been well-received by other Courts.  Id., citing Giedosh v.

Little Wound School Board Inc., 995 F. Supp. 1052, 1059 (D. S.D. 1997)(holding that

"'Indian tribe' under Title VII and the ADA includes a school board which is

established and controlled by individuals of the Tribe."); Setchell v. Little Six, Inc.,

1996 WL 162560 at *2 (Minn.App., April 9, 1996)(holding that it was "unpersuaded"

that the ADA's exemption of Indian Tribes did not apply to a wholly-owned

corporation of the tribe and, in any event, any doubts should be resolved in favor of

the Indian Tribes), rev. granted (Minn., July 10, 1996), cert. denied, 521 U.S. 1124

(1997); and Wardle v. Ute Indian Tribe, 623 F.2d 670, 672 (10th Cir. 1980) ("Indian

tribes and businesses operating on or near Indian reservations are excluded from the

employment discrimination prohibitions of Title VII."). The District Court concluded that, even though the plaintiff had not developed that argument with particularity, it constituted a non-frivolous argument for a modification of the existing law, which did not warrant Rule 11 sanctions.

We find further support for the fact, that the Corporate Commission is not subject to suit under the ADA, by the law which has developed under Title VII of the Civil Rights Act of 1964. The ADA's definition of employer mirrors the definition of employer that is prescribed in Title VII. Notably, with respect to Title I of the ADA, the House Committee Reports state that, "[c]onsistent with title VII of the Civil Rights Act of 1964, the term 'employer' under this legislation does not include * * * an Indian tribe." H.R.Rep. No. 101-485, Pt II, at 54 (1990); see also, Pena v. Miccosukee Service Plaza, 2000 WL 1721806 at *2 n.1 (S.D. Fla., October 4, 2000).

"Courts often look to case law developed under Title VII for direction interpreting similar terms under the ADA, and the [Courts of Appeals] that have addressed [the definition of employer under the ADA] have relied on Title VII precedent." Donnelly v. St. John's Mercy Medical Center, 2008 WL 2699859 at *2 (E.D. Mo., June 30, 2008)(applying case law interpreting the definition of "employer" under Title VII to a case brought under the ADA, and finding that the definition

excludes individuals)[citing cases]; see also, <u>Skomsky v. Speedway SuperAmerica, L.L.C.</u>, 267 F. Supp.2d 995, 1000 (D. Minn. 2003)("Federal anti-discrimination laws such as the ADA are patterned after Title VII, and as such should be evaluated similarly.").

Courts have consistently held that an Indian Tribe is not subject to suit under Title VII, according to that enactment's express provisions. See, e.g., <u>Morton v. Mancari</u>, 417 U.S. 535, 545 n.19 (1974); <u>Dille v. Council of Energy Resource Tribes</u>, 801 F.2d 373, 375-76 (10th Cir. 1986); <u>Wardle v. Ute Indian Tribe</u>, supra at 672; <u>Barker v. Menominee Nation Casino</u>, supra at 394; <u>In re Prairie Island Dakota Sioux</u>, 21 F.3d 302, 304 (8th Cir. 1994); <u>E.E.O.C. v . Fond du Lac Heavy Equip. & Constr. Co., Inc.</u>, 986 F.2d 246, 250 (8th Cir. 1993); <u>Ferguson v. SMSC Gaming Enterprise</u>, supra at 931; <u>Tenney v. Iowa Tribe of Kansas</u>, 243 F. Supp.2d 1196, 1198 (D. Kan. 2003). The Supreme Court has advised that the exemption of Indian Tribes, from the application of Title VII, "reveals a clear congressional recognition * * * of the unique legal status of tribal and reservation-based activities." <u>Morton v. Mancari</u>, supra at 545-46.

Accordingly, we find ample support in the case law for our conclusion that Title I of the ADA does not apply to Indian Tribes, and therefore, if the Corporate

Commission is an entity, which falls within the meaning of "Indian Tribe," then no Federal Question is presented, and the Plaintiffs' ADA claim must be dismissed for lack of subject matter jurisdiction. See, e.g., Ferguson v. SMSC Gaming Enterprise, supra at 932 (dismissing for lack of subject matter jurisdiction where tribal entity was exempt from the requirements of Title VII); Bruns v. Leech Lake Reservation Housing Authority, 1997 WL 882911 at *4 (D. Minn., September 29, 1997)(same); Charland v. Little Six, Inc., 198 F.3d 249 (8th Cir. 1999)[Table Decision](affirming dismissal for lack of subject matter jurisdiction because Title VII and the ADA explicitly exempted Indian tribes from the definition of employer).

For reasons we have previously detailed, we conclude that the Record plainly demonstrates that the Corporate Commission is an arm of the Mille Lacs Band, such that the Corporate Commission clearly falls within the definition of an Indian Tribe, and therefore, we conclude that the Commission cannot be sued under Title I of the ADA. The Corporate Commission was established under Tribal law, for the purpose of advancing tribal interests. According to the uncontradicted Record, the Corporate Commission has been entrusted with the responsibility of conducting and engaging in Tribal gaming, on behalf of the Mille Lacs Band, and specifically envelopes the

Grand Casino Hinckley.[12]  Whatever the meaning of the Corporate Commission's business relationships, they do not suggest anything other than that the Corporate Commission was formed by, and conducts itself on behalf of, the Mille Lacs Band.

As a consequence, we conclude that a suit against the Corporate Commission is, in practical effect, a suit against the Mille Lacs Band.  Therefore, as an arm of the Mille Lacs Band, the Corporate Commission is not subject to suit under the express terms of Title I of the ADA.  See, <u>Tenney v. Iowa Tribe of Kansas</u>, supra at 1198 (rejecting plaintiff's argument that a Tribal Commission engaged in operating a casino did not fall within definition of an Indian Tribe under Title VII); <u>Duke v. Absentee Shawnee Tribe of Oklahoma Housing Authority</u>, 199 F.3d 1123, 1125 (10th Cir. 1999), cert. denied, 529 U.S. 1134 (2000)(housing authority designed to further Indian Tribe's economic interests was an "Indian Tribe" within the meaning of Title VII, even though created as a State agency under State law, rather than by Tribal

---

[12]To the extent that the Plaintiffs suggests that another entity must be involved in the ownership and management of Grand Casino Hinckley, we conclude that the evidence is unpersuasive.  We find no reason to doubt that the Corporate Commission is an arm of the Mille Lacs Band, in which no other entity has an interest.  The fact that other entities, which are not arms of the Indian tribe, and would not be within the definition of an Indian tribe, conduct business with the Corporate Commission, does not detract from the ultimate conclusion that it is an arm of the Mille Lacs Band.

Ordinance); Pink v. Modoc Indian Health Project, Inc., 157 F.3d 1185, 1188 (9th Cir. 1998), cert. denied, 528 U.S. 877 (1999)(non-profit created by Indian Tribe to provide health services was an "Indian Tribe" within the meaning of Title VII); Nahno-Lopez v. Houser, 627 F. Supp.2d 1269, 1283 (D. Okla. 2009)(finding that casino was an arm or subdivision of an Indian Tribe); Allen v. Gold Country Casino, supra.

The circumstances presented here underscore the reality that, within the limited jurisdiction of Federal Courts, "it is not true that our jurisprudence ordinarily supplies a remedy in civil damages for every legal wrong," even if a wrong can be proven. Nixon v. Fitzgerald, 457 U.S. 731, 754 n. 37 (1982). Under the circumstances presented here, Congress has expressly determined, as is Congress' prerogative, that Indian tribal actors are beyond the jurisdictional reach of Title I of the ADA, and we are obligated to accept that clear expression of Congressional intent. Accordingly, we recommend that the Corporate Commission's Motion to Dismiss for lack of subject matter jurisdiction be granted.

NOW, THEREFORE, It is --

RECOMMENDED:

That the Plaintiffs' Motion to Postpone the Hearing, and to Compel Production of Documents [Docket Nos. 27 and 28] be denied, and that the Defendant's Motion to Dismiss [Docket No. 12] be granted.


Dated: July 12, 2010                          *s/Raymond L. Erickson*
                                              Raymond L. Erickson
                                              CHIEF U.S. MAGISTRATE JUDGE


## N O T I C E

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than  July 26, 2010**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than July 26, 2010**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.